# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TAUNDA G. ANGEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:15-CV-78-TLS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The Plaintiff, Taunda G. Angel, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). On October 13, 2011, the Plaintiff protectively filed an application for DIB; and on November 23, 2011, she filed an application for SSI. In both applications, the Plaintiff alleges disability beginning on July 16, 2011. An ALJ held a hearing on May 13, 2013, at which the Plaintiff—who was represented by an attorney—and a vocational expert both testified. On September 6, 2013, the ALJ found that the Plaintiff has the following severe impairments: asthma, allergies, and obesity. However, he ultimately concluded that the Plaintiff is not disabled. The Plaintiff requested review of the ALJ decision, and on December 18, 2014, the Appeals Council denied the Plaintiff's request for review. On February 18, 2015, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. For the following reasons, the ALJ's decision is reversed and remanded for proceedings consistent with this Opinion and Order.

# ALJ HEARING

A.  **The Plaintiff's Testimony**

The Plaintiff is 55 years old and lives with her two daughters. She has completed some college, and she has past relevant work experience as a cashier and office clerk.

At the ALJ hearing on May 13, 2013, the Plaintiff described her daily experience with several alleged physical impairments. The Plaintiff said she suffers from allergies, arthritis, and exacerbations of asthma that cause frequent uncontrollable coughing fits and asthma attacks. According to the Plaintiff, her asthma causes coughing fits or asthma attacks every four to five hours even when she takes proper medication. The Plaintiff also said that she suffers from asthma "flare ups" that last for days or weeks and cause her to be absent from work for months at a time. The Plaintiff also explained that her arthritis makes it difficult to stand or sit in the same location for extended periods of time. When asked why she could not work, the Plaintiff testified:

> My asthma is very, very severe and I have problems at different times a year due to when the weather changes during the year or chemicals affecting my breathing and everything that at different times of year and everything from chemicals that—colognes and stuff like that might affect my breathing.

(R. 40–41 [ECF No. 14].)

The Plaintiff treats her asthma by using four different inhalers, a nebulizer machine with albuterol solution, Xolair shots, and various other medications. According to the Plaintiff, these medications trigger nausea and an upset stomach. The Plaintiff also said she occasionally treats her asthma with prednisone, which causes weight gain and sensitivity to fluorescent light and direct sunlight.

The Plaintiff testified that she has the ability to perform limited chores around the house

(i.e., laundry or cooking) and to travel short distances (e.g. for grocery shopping). The Plaintiff relies on her daughter's assistance, particularly for strenuous household chores.

B.      Vocational Expert's Testimony

At the hearing, the vocational expert (VE) testified that an individual of the Plaintiff's age, education, and work experience, who was limited to light exertional work[1] in a work setting that (1) does not expose the individual to extreme heat or cold; (2) does not expose the individual to wetness or to humidity; (3) does not expose the individual to environmental irritants such as fumes, odors, dusts, or gasses; and (4) does not expose the individual to raw chemicals or solutions, could perform the Plaintiff's past work as an office clerk. The VE also stated that, typically, an individual employed as an office clerk could "usually [miss] no more than a day to a day and half per month over the year." (R. 60.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla

---

[1] The ALJ defined light exertional work as work that never requires the individual to climb ladders, ropes, or scaffolds, but does occasionally require the individual to climb ramps or stairs, balance, stoop, kneel, and crouch (but never crawl). (R. 59.)

but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that her "impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established that he or she has a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so he moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff had the following severe impairments: asthma, allergies, and obesity.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Because the Plaintiff's impairment was found not to meet or equal a listed impairment, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical

and mental activities in light of her impairments. SSR 96–8p. The ALJ concluded that the Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). Specifically, the ALJ found that the Plaintiff is able to occasionally lift up to 20 pounds, and frequently lift up to 10 pounds; stand and/or walk up to 6 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. However, the ALJ added that the Plaintiff cannot crawl or climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, or crouch. Additionally, the Plaintiff must avoid even moderate exposure to humidity, wetness, and temperature extremes; and must also avoid all exposure to raw chemicals, solutions, and pulmonary irritants such as fumes, odors, dusts, and gases.

At the final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing past relevant work as an office clerk.

On appeal, the Plaintiff contends that the ALJ erred: (1) by failing to provide sufficient reasons for concluding that the Plaintiff's asthma does not meet or medically equal the impairments listed by the Social Security Administration as being so severe that it precludes SGA; (2) by failing to provide sufficient reasons for not giving controlling weight to the opinion of the Plaintiff's treating physician, Dr. Christina Barnes; and (3) by failing to provide evidence supporting the finding that the Plaintiff can sustain light work.

**A.      Presumptive Disability Analysis**

The Plaintiff contends that the ALJ erred by concluding that the Plaintiff's asthma does not medically equal the impairments listed by the SSA in Listing 3.03. If a claimant has an

impairment that meets or equals an impairment found in the Listing of Impairments, she is presumptively eligible for benefits. *Minnick v. Colvin*, 75 F.3d 929, 935 (7th Cir. 2015) (applying 20 C.F.R. § 404.1520(d)). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Id.* (quoting *Barnett v. Barnhart*, 381 F.3d 644, 688 (7th Cir. 2015)). The Listings specify the criteria for qualifying impairments.

Under Listing 3.03, asthma is disabling when there is evidence of (1) chronic asthmatic bronchitis or (2) "attacks [] in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or six times a year." 20 C.F.R. Pt. 404, Subpt. P App'x 1 § 3.03B. Moreover, "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency." *Id.* Asthma attacks are defined in the Listing as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting." *Id.* § 3.00C.

The ALJ considered whether the Plaintiff has chronic asthmatic bronchitis. To determine if the Plaintiff has the condition she must be subjected to a pulmonary function test (PFT) so that her one-second forced expiratory volume (FEV1) score can be calculated. The Plaintiff's FEV1 score had to be below a certain threshold. The ALJ explained that the objective evidence from the series of PFTs conducted on the Plaintiff are determinative that the Plaintiff's condition does not fulfill this specific criterion under the Listing.

The ALJ then considered whether the Plaintiff suffered frequent enough asthma attacks

to qualify. Asthma attacks are specifically defined in the Listing as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting." § 3.00C. The ALJ explained that the objective evidence from the Plaintiff's medical records showed only one instance in which she went to a hospital, emergency room, or equivalent setting for emergency medical care. He also explained that, because of her lack of emergency care, she did not have the requisite number of asthma attacks for her condition to qualify under Listing 3.03.

The Plaintiff, however, argues that the ALJ erred because his decision does not sufficiently consider whether the Plaintiff's condition is medically equivalent to the requirements contained in the Listing. When the impairment does not specifically meet the requirements as outlined in a listing, it will still be considered medically equivalent so long as the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1562(b)(i)(ii). An analysis specifically determining if the claimant's condition is equivalent to that of a listing is necessary to proceed to step four of the five-step evaluation process. *See Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2001) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 671 (7th Cir. 2004)) (explaining "an ALJ may not 'simply assume[] the absence of equivalency without any relevant discussion'"). Additionally, if a claimant has more than one impairment, the ALJ should consider "whether the combination of the impairments is medically equal to any listed impairment." § 404.1562(b)(3); *see also Pomilia v. Astrue*, 2012 WL 691628, at *9 (N.D. Ind. Mar. 2, 2012), *Vujinovich v. Astrue*, 2011 WL 1157499, at *8 (N.D. Ind. Mar. 28, 2001) (explaining that the ALJ should have

8

considered the combined effects of the claimant's condition and obesity). *But cf Marcus v. Bowen*, 696 F. Supp 364, 373 (N.D. Ill. 1988) (explaining that "the mere accumulation of a number of impairments [] will not establish medical equivalence). To determine if an impairment or combination of impairments is medically equal to a listing, the ALJ must take into account the claimants "symptoms, signs, and laboratory findings." §404.1529(3); *Bellmore v. Astrue*, 2010 WL 1266494, at *14 (N.D. Ind. Mar. 25, 2010).

In the four paragraphs discussing the third stage of the evaluation process, the ALJ never specifically discussed whether the Plaintiff had a condition that was medically equivalent to a listed condition. The ALJ examined the PFT results from December 2010 and August 2012, and wrote that with "improvement noted in the February PFT, this indicated Listing-severity lasted only about one month, which does not satisfy the 12-month durational requirements." (R. 20.) He also found that the attacks were not at a "frequency that would satisfy the Listing." (*Id.* 19). But this is not the same as considering whether the claimants symptoms, signs, or laboratory findings suggested that her asthma was of equivalent severity to the Listing. Further, it does not appear that the ALJ considered the Plaintiff's severe conditions—which the ALJ lists as asthma, allergies, and obesity—in their totality. Failing to properly consider whether the Plaintiff's condition is equivalent to a listed condition is grounds for remand. *Byerley v. Colvin*, 2013 WL 2145598, at *7 (N.D. Ind. May 14, 2013) (remanding because the ALJ did not provide a sufficient explanation as to why the claimant's condition was not *equivalent* to the listing, despite the ALJ's thorough analysis of why the claimant did not *meet* the listing); *Cueller v. Astrue*, 2011 WL 1743841, at *5 (E.D. Wis. May 5, 2011) ("the court concludes it was erroneous for the ALJ to offer nothing more than a conclusory statement that the plaintiff did not medically

9

equal [the] listing"); *McMurtry v. Astrue*, 749 F. Supp. 2d 875, 882 (E.D. Wis. 2010) (remanding because the ALJ performed a perfunctory analysis of medical equivalence).

On remand, the ALJ must determine if the Plaintiff's condition is medically equal to that of a listing and, if necessary, explain why the condition is not equivalent before he can proceed to the fourth stage of the analysis.

B.  **Opinion of Treating Physician**

Next, the plaintiff contends that the ALJ erred by failing to give proper weight to the opinion of Dr. Christina Barnes.

If a treating physician's opinion on the "nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the [ALJ] must give it controlling weight." SSR 96-8p; 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The regulations provide that more weight is generally given to the opinion of treating sources who have (1) examined a claimant, (2) treated a claimant frequently for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. § 404.1527(c)(2)(i), (ii).

If the ALJ does not give a treating source's opinion controlling weight, the ALJ must consider various factors to determine the weight to assign the opinion. These include the length, nature, and extent of the claimant's relationship with the treating physician; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and

whether the physician is a specialist. § 404.1527(c)(2)(i)-(ii),(c)(3)–(6). Thus, an ALJ may discount a treating physician's medical opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 200). The ALJ must give "good reasons" to support the weight he ultimately assigns to the treating physician's opinion. § 404.1527(c); *see also Walls v. Colvin*, 2015 WL 7077340, at *4 (N.D. Ill Nov. 12, 2015) (concluding that the checklist factors must be applied when an ALJ discredits a treating source's opinion).

The administrative record shows that Dr. Barnes, an allergist and immunologist, has treated the Plaintiff's asthma continuously since 2010. At an initial consultation with Dr. Barnes on November 10, 2010, the Plaintiff reported worsening symptoms of dry cough, dyspnea at rest, wheezing, angioedema, and chest tightness. Dr. Barnes conducted a physical exam and discovered moderate wheezing and decreased breath sounds. At a follow up appointment in December 2010, Dr. Barnes found that the Plaintiff suffered from mild airway obstruction (with FEV1 scores of 1.963, 1.515, and 1.474). Dr. Barnes prescribed Xolair injections, which the Plaintiff received from Dr. Barnes's office on a weekly basis. Then, on March 13, 2013, the Plaintiff complained of a dry cough, prompting Dr. Barnes to conduct a physical examination that revealed bilateral diffuse inspiratory wheezing, forced expiratory wheezing, and a congested cough.

On May 13, 2013, Dr. Barnes submitted a Residual Functional Capacity questionnaire, wherein she outlined that the Plaintiff suffers from persistent asthma and partly controlled allergic rhinits. (R. 451–54.) Dr. Barnes wrote that the plaintiff suffered from "recurrent severe exacerbations" and that upper respiratory infections, allergens, exercise, and irritants were

11

participating factors to the Plaintiff's severe asthma exacerbations. (*Id.*) Dr. Barnes determined that the Plaintiff's condition would "be subject to good days and bad days" and that she would need to "avoid all exposure to extreme cold, extreme heat, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents, cleaners, fumes, odors, gases, dust, chemicals, nuts, cats, dogs, mold, and pollens." (*Id.*) Dr. Barnes also opined that the Plaintiff "could only walk one city block without rest and was incapable of standing for two or more hours during the course of an 8-hour work day." (*Id.*) Finally, Dr. Barnes estimated that the Plaintiff would be absent from work, on average, about four days every month. (*Id.*)

The ALJ granted Dr. Barnes's opinion "little weight" (R. 18), on grounds that her clinical findings demonstrated no significant respiratory findings; while also noting that the Plaintiff only required emergency medical care on one occasion, and that the most recent pulmonary function test was "normal." (R. 28.)

After a critical review of the evidence, the Court has identified several issues that merit further discussion on remand. First, while relying on his observation that "the majority of Dr. Barnes's clinical findings demonstrate no significant respiratory findings" (R. 24.), the ALJ seemingly ignores the many instances in which Dr. Barnes reported respiratory findings, such as decreased breath sounds (R. 305); moderate wheezing (R. 313); bilateral diffuse wheezing-inspiratory, and wheezing-forced expiratory (R. 390). These medical signs are supportive of the doctor's opinion, but there is no evidence that the ALJ took them into consideration before making his decision. If the ALJ concludes that Dr. Barnes's opinions are not supported by significant respiratory findings, he must give examples of how her opinions were not supported and, in instances when they were supported, he must give adequate reasons as to why the support

12

she provided was not adequate. If the ALJ finds that Dr. Barnes's opinion is supported by medical signals and laboratory findings he must assign an appropriate weight considering the level of support.

In the ALJ's decision, he claims that Dr. Barnes's opinion is inconsistent with the record because "the claimant sought emergency care only one [*sic*] occasion" and that "the most recent pulmonary function test was normal." This analysis is incomplete because it ignores a great volume of medical evidence that is consistent with the opinion of Dr. Barnes. The Plaintiff cites many examples where her general physician, Dr. Stanish, made observations that were consistent with Dr. Barnes's final opinion. For example, Dr. Stanish observed that the Plaintiff frequently missed work due to her asthma and on several occasions recommended she remain off work until her respiratory conditions improved. (R. 262) (instructing the Plaintiff to remain home from work for one week to see if the steroid burst improves her condition, that it may take weeks for her to return to work); (R. 254) (instructing the Plaintiff to remain home from work until her conditions improve); (R. 238) (noting that the Plaintiff should not work for four weeks); (R. 233) (instructing the Plaintiff to remain home from work until her conditions improve). Additionally, Dr. Stanish and Dr. Barnes observed the Plaintiff display the same symptoms. (R. 263 (observing wheezing and acute asthma exacerbations).)

Second, even assuming that the ALJ has articulated legitimate reasons to discredit Dr. Barnes's opinion as to the Plaintiff's functional limitations, the ALJ's discussion, as currently presented, fails to comply with 20 C.F.R. § 404.1527(c)(2). As the Seventh Circuit has instructed, even if an ALJ gives good reason for not giving controlling weight to a treating physician's opinion, the ALJ "must consider" the checklist of factors under § 404.1527(c)(2),

including the length, nature, and extent of the treatment relationship; frequency of examination; the physician's speciality; the types of tests performed; and the consistency and support for the physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reversing where the ALJ did not explicitly address the checklist of factors, the proper consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion) (internal quotation marks and citation omitted); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight); *Johnson v. Astrue*, No. 10 C 7848, 2013 WL 453186, at *11 (N.D. Ill. Feb. 6, 2013) (remanding to consider weight afforded to treating physician's opinion with instruction to explicitly consider the factors set forth in 20 CFR § 404.1527(c)(2) if the ALJ determined that the treating physician's opinion was not entitled to controlling weight); *Fuller v. Astrue*, No. 12 C 0171, 2013 WL 617073, at *12 (N.D. Ill. Feb. 19, 2013) (same).

As noted above, the ALJ discredits Dr. Barnes's opinion by citing objective medical evidence, but offers inadequate discussion for the remaining § 404.1527(c)(2) factors, including the length, nature, and extent of the treatment relationship between Dr. Barnes and the Plaintiff; the frequency of examination; Dr. Barnes's specialty in asthma; or the types of tests performed.[2] Absent such a discussion, the ALJ has not provided a rationale that is "sufficiently specific" under the social security regulations. *See* SSR 96-2, 1996 WL 374188, at *5 ("[The ALJ's]

---

[2]Although the ALJ discredits Dr. Barnes's opinion by noting that "[for] many months . . . [ the Plaintiff's] medical appointments were limited to receiving her monthly allergy shot" (R. 24), the ALJ makes no reference to the Plaintiff's appointments with Dr. Barnes that were not merely for the purpose of administering a Xolair shot, such as: the initial consultation, the appointments to conduct spirometry tests, the appointments made by the Plaintiff to report worsening symptoms, and the follow-up appointment after the Plaintiff went to the emergency room.

14

decision must . . . be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight.").

Accordingly, the Court concludes that remand will offer the ALJ an opportunity to correct the above errors by (1) providing a more thorough analysis of Dr. Barnes's opinion, and in particular, by adequately addressing the § 404.1527(c)(2) factors so that the Court may better understand his rationale for discounting Dr. Barnes's opinion; and (2) develop a complete and more accurate record as to the Plaintiff's treatment records during the relevant period.

### C. The ALJ's finding that Plaintiff Can Sustain Light Work

Lastly, the Plaintiff contends that the ALJ erred in determining her RFC by improperly discrediting her testimony and eliciting improper testimony from the vocational expert.

#### 1. *The Plaintiff's Testimony*

When determining a claimant's RFC, an ALJ must consider statements provided by medical sources as well as descriptions and observations about the impairment from the plaintiff's own testimony. 20 CFR § 404.1545. Although the plaintiff's testimony must be considered, an ALJ can discredit the testimony because "hearing officers are in the best position to see and hear the witnesses and assess their forthrightness [therefore the court] afford[s] their credibility determinations with special deference." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (quoting *Powers v. Apfel*, 207 F.3d 432, 435 (7th Cir. 2000)). ALJs receive this discretion to determine the weight of an applicant's testimony because applicants for disability have an incentive to exaggerate their symptoms. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

15

"[The court] will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Jens*, 347 F.3d at 213. However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

In this case, it is impossible to know if the ALJ's credibility determination is entitled to deference due to the procedural errors he made while discrediting the opinions of the Plaintiff's treating physician. When the ALJ determines the credibility of the Plaintiff's testimony, he must do so by considering the testimony "in relation to objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4). The ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] treating or non-treating source or other persons about how" the claimant is affected by his or her symptoms. *Id.* The ALJ explained that he discredited the Plaintiff's testimony primarily using medical evidence. When considering the medical evidence, the ALJ awarded the medical opinion of Dr. Barnes "little weight" through an improper analysis. If the ALJ had followed the correct procedure it is possible the he would have afforded Dr. Barnes's opinions a greater weight, which would likely affect the credibility he assigned to the Plaintiff's assertions. The procedural error committed by the ALJ makes it impossible for the Court to review the validity of the ALJ's decision regarding the Plaintiff's testimony, thus remand is required. On remand, after the ALJ correctly evaluates the weight Dr. Barnes's opinions should receive, he must then reconsider the Plaintiff's testimony against the totality of the evidence.

2. *The Vocational Expert's Testimony*

Finally, the Plaintiff argues that "the ALJ violated SSR 96-8p by failing to account for *any* asthma exacerbations when determining the Plaintiff's ability to perform other work at Step Five." (Pl. Br. at 24.) The Plaintiff makes this claim because at no time was the VE asked to consider if the Plaintiff's asthma exacerbations limited the Plaintiff's ability to work. When asking the hypothetical question the ALJ must ensure that the question "fully set[s] forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Williams v. Massanari*, 171 F. Supp 2d. 829, 834 (N.D. Ill. 2001). In this instance the ALJ's question focused on the irritants and activities that the Plaintiff must avoid due to her impairments. Despite this, the hypothetical question was incomplete because it did not specifically list the Plaintiff's impairments—which according to the ALJ include asthma, allergies, and obesity—in a manner that would inform the VE of their existence. Additionally, there is no evidence that the VE became aware of the Plaintiff's impairments through independent review of the evidence. Furthermore, the ALJ's incomplete analysis of Dr. Barnes's opinion (as explained earlier) impacts the RFC determination and, therefore, the hypothetical question asked to the VE. *Id.* (explaining that if the ALJ poses a hypothetical question to the VE based upon an RFC which was based on incomplete medical evidence, then the VE's testimony is inaccurate and the commissioner's burden is not satisfied). The Commissioner has not, on this record, met her burden of showing that the claimant is capable of performing work which exists in the national economy.

## CONCLUSION

For the reasons stated above, the decision of the ALJ is REVERSED and REMANDED for proceedings consistent with this opinion and order.

SO ORDERED on August 11, 2016.

                                                  s/ Theresa L. Springmann  
                                                  THERESA L. SPRINGMANN  
                                                  UNITED STATES DISTRICT COURT  
                                                  FORT WAYNE DIVISION